IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHRYN NICHOLS,

        Plaintiff,

vs.                                Case No. 09-1213-JTM

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

MEMORANDUM

Plaintiff Kathryn Nichols has applied for Social Security supplemental income benefits. Her application was denied by the Administrative Law Judge (ALJ) on August 27, 2007, a decision affirmed by the Appeals Council on May 11, 2009. Nichols alleges that the ALJ rendered an erroneous determination of her residual functional capacity (RFC) — and consequent step five finding of her ability to work — because she suffers from an severe mental impairment and the ALJ failed to assess her mental limitations in the RFC. This court denied Nichols' appeal by previous Order (Dkt. 21), and the present Memorandum is entered consistent with that Order.

Plaintiff-claimant Nichols was born on April 21, 1959. She originally stated that she became disabled beginning May 11, 2000, but amended this at the administrative hearing to May 20, 2005. She has previously worked as a cashier. She has cited a variety of ailments, including back pain, joint pain, and headaches. Her current appeal emphasizes various mental limitations. The detailed

facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 17-26), the brief of plaintiff Nichols (Dkt. 12, at 1-4), and the Commissioner's response (Dkt.18, at 2-6).

The ALJ found that Nichols suffered from the severe impairments of arthralgias, spinal strain, fibromyalgia, headaches, and a history of aneurysm. He further found that she had a mental disorder which was not severe. (Tr. 17). He found that Nichols could do light work, but she should not be exposed to extreme cold. These restrictions would not prevent her from performing her past work. (Tr. 26).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied

by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

The court finds that substantial evidence supports the ALJ's determination that Nichols did not suffer from a severe mental impairment. A "severe" impairment is one which has more than a minimal impact on a person's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a).

Here, the ALJ correctly noted Nichols had met with T.A. Moeller, Ph.D., for a psychological examination in 2002, and that Moeller reported Nichols as disabled. He found she had a low average intellectual functioning. She was preoccupied with her physical limitations, suffered from a pain disorder, and showed some limitation in her short-term memory. (Tr. 166-71). At the same time, Nichols told Moeller that she had never received any mental care before, and that she felt no depressive symptoms or any subjective sense of depression. Nichols showed a general command of background information, her capacity for abstract reasoning was adequate, her eye contact appropriate, and her speech clear, understandable, and precise. She was not impaired in her ability to understand, remember, and carry out instructions, or make simple work-related decisions. She

3

exhibited a slow, but logical and sequential, sequence of thought, and Moeller found no evidence of thought disorder.

Nichols began to take the antidepressant Zoloft, but did not take any psychotropic medication after she began treatment with Dr. Schneider in October, 2004. The ALJ found that Nichols had showed significant improvement in mental functioning since the 2002 visit to Dr. Moeller, and that she had exhibited no more than mild limitations in mental functioning since 2005. (Tr.19). In particular, the ALJ noted the positive results of Nichols examination by psychologist Larry Boll, Ph.D., on September 7, 2005. (Tr. 243-46).

Dr. Boll found that Nichols denied any psychological problems. She was then living with three of her children and a four-year-old grandchild. She appeared pleasant, friendly, and cooperative. She denied any depressive symptoms, and her thought processes were logical and coherent. She reported some problem with concentration, but she dealt with this by writing herself notes. Dr. Boll concluded that Nichols might have some difficulty with "a more authoritarian or critical supervisor," but that her problems were mainly her physical impairments. He believed that Nichols could follow simple instructions and perform simple tasks, and relate to others in a supportive work environment.

Nichols testified at the administrative hearing, where she ascribed her disability solely to physical pain. She stated she was not receiving any mental treatment, and did not recall ever receiving mental treatment.

In the present appeal, Nichols stresses that she was previously found disabled due to a mental impairment. She argues that her recent denial of mental problems is unimportant, as persons suffering from mental problems may not recognize they have such problems. She also argues that

the ALJ failed to give appropriate weight to the 2002 opinion of Dr. Moeller, and gave too much weight to that of Dr. Boll in 2005.

The court finds that substantial evidence supports the decision of the ALJ, who noted that after receiving treatment from Dr. Stephen Schneider, D.O., Nichols did not exhibit any further substantial signs of mental difficulties. She stopped taking psychotropic medications in 2004, and Dr. Schneider found Nichols was not in any apparent psychological distress. Dr. Boll essentially agreed. Further, while the plaintiff is correct that many persons with mental impairments may not recognize their condition, the record indicates that Nichols did actively seek treatment for mental concerns, prior to her general improvement in condition after 2005.

The ALJ could appropriately give limited weight to the early opinion by Dr. Moeller, who was not a treating physician. The weight of Dr. Moeller's opinion is further limited by its lack of supporting findings, and its conflict with other evidence in the case, such the findings by Dr. Boll as well as the generally positive reports of Nichols' dealings with her family and in previous employment. As the ALJ noted, Nichols was able to perform general living activities, including games with her children which required a significant amount of concentration.

The ALJ found that Nichols' statement of disability due to pain "from her head to her toes" was not fully credible. (Tr. 21-23). This conclusion was appropriate in light of the evidence and the framework established under *Luna v. Bowen*, 835 F.2d 161 (10th Cir. 1987). As the ALJ noted, Nichols took only Tylenol or Tylenol PM, she had never sought any additional pain treatment, and the objective medical evidence does not support the extent of plaintiff's claims. Rather, the evidence showed "significant improvement in mental functioning," objective medical tests such as x-rays failed to show any discrete problems, Nichols had made other claims of injuries which were simply

untrue (such as a broken back and tailbone), and she had engaged in a variety of physical activities in her daily life which were inconsistent with her claims of disability.

The court finds that the ALJ, viewing all of the evidence in the case, appropriately determined that Nichols had the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She could perform light work, and could sit, stand, and walk six hours in an eight-hour workday, but she should avoid concentrated exposure to extreme cold. The evidence failed to show that Nichols' non-severe mental impairments supported additional limitations. The ALJ expressly rendered his RFC determination on the basis of the entire medical record, including treatment records and the opinions of consultative examiners. (Tr. 24). Evidence from a vocational expert confirmed that Nichols could perform her former work based upon the limitations documented in the record.

IT IS SO ORDERED this 12th day of July, 2013.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE